Case number 24-1011, Aimee Sturgill v. American Red Cross. Argument not to exceed 15 minutes per side. Mr. Wilkin, you may proceed for the appellant. I apologize for my attire. My suitcase did not make it on time. It's happened to me before, too. So, all right. Understood. Thank you. Good morning, Your Honors. Good morning. My name is Colin Wilkin, and I'm here to represent Plaintiff Appellant Aimee Sturgill, and I would like to reserve seven minutes for my rebuttal time. Very well. First, I would like to talk about what this case is not about. This case is not about any animus towards the COVID-19 vaccine or the severity of the global pandemic in general. What this case is about is defendant the American Red Cross' categorical denial of Ms. Sturgill's religious accommodation request to not receive the COVID vaccine based on her sincerely held religious beliefs. This case is also about Ms. Sturgill's well-pled complaint being dismissed under a heightened pleading standard that is not appropriate for Title VII complaints. Now, the question before this court today is whether Ms. Sturgill pled particular facts that support an inference that her refusal to receive the COVID vaccine was an aspect of her religious beliefs. At the time that Ms. Sturgill's complaint was dismissed, this question was being hotly debated across the Sixth Circuit. However, in the last few months, this court has issued two opinions which make it clear that the answer to this question is that Ms. Sturgill did plead enough and that her reversal was in error and it should be reversed. Based on this court's enlightening recent holdings, I believe that this issue has strong guidance before it. However, I would like to address three crucial issues and then answer any questions. First, in this case, the district court required that Ms. Sturgill plead the prima facie elements of a religious discrimination claim and then tested them in a manner more appropriate for summary judgment. However, this court's recent ruling in Savelle v. Metro Health Systems has solidified that plaintiff is not required to plead a prima facie case. Rather, all she is required to do is plead sufficient facts from which a court could plausibly conclude that defendant terminated her because of her religious beliefs. Second, I don't believe it can be disputed any longer that Ms. Sturgill pled facts that support the inference that her refusal to be vaccinated for COVID was an aspect of her religion. And this court's recent opinion in Savelle, and especially Lucky v. Landmark Medical of Michigan, make it clear that what Ms. Sturgill pled is sufficient. Rather than take plaintiffs pleading that receiving the COVID-19 vaccine would violate her religious beliefs as true, the district court dismissed her claims holding that she has not pled that she has a religious belief that conflicts with defendant's vaccine mandate. However, Ms. Sturgill's complaint is riddled with allegations regarding her religious beliefs and how they steered her daily decision, and especially her decision to not receive the COVID-19 vaccine. Specifically, Ms. Sturgill pled that her religious beliefs stem from the biblical teaching of Jesus Christ, and that she makes her daily decisions through prayer and by reading scripture, and that it would go against God's law and her religious beliefs to receive the COVID-19 vaccine. Now, this is almost exactly what the Lucky plaintiff pled, and this court stated just about a month and a half ago that those allegations were almost self-evidently enough to establish that at the pleading stage, Ms. Lucky's refusal to receive the vaccine was an aspect of her religious beliefs. Is the only claim you're making a failure to accommodate claim based on religion? Yes, Your Honor. Yeah, this is a failure to accommodate claim, and we also believe that we have brought a desperate treatment claim. I think that was the question. Have you brought a desperate treatment claim? And if so, where is that in your complaint? Well, Your Honor, the Supreme Court in EEOC v. Abercrombie and Fitch has made it clear that there is no freestanding failure to accommodate claim. The overarching claim here is Title VII religious discrimination, and my understanding is that we can prove that with a failure to accommodate. We can prove that with disparate treatment, traditional disparate treatment, or we can even prove it with direct evidence of discrimination. But all that's required at the pleading stage is that we plead that Ms. Sturgill was discriminated against because of her religion. Essentially, my argument is that Ms. Sturgill can plead, I have these religious beliefs. Don't you have to put them on notice of what your claim's about, though? I mean, rather than just say it's religious discrimination, I mean, they have to have notice, don't they? Yes, Your Honor. I mean, it's clear that you put them on notice that you say they failed to accommodate because of your religious belief. But I'm not sure that you put them on notice of a disparate treatment claim, that they've got to defend against that, too. Well, Your Honor, we pled the specific section of the code that is disparate treatment. To say that you, for example, somebody who is terminated, they may not have knowledge that other employees were given accommodation requests. Ms. Sturgill, in this case, was a mostly remote employee. It's not through the discovery, it's not until discovery commences that maybe an employee learns of this. So, to require that she make potentially... I mean, but you can amend your complaint if you come up with that. I mean, you have to plead facts to show that she was treated disparately, right? Well, Your Honor, I believe we did. We pled that she was terminated because of her religious beliefs. We pled that defendant made plaintiff expose their vaccination status, and that they were subject to different terms and conditions of employment depending on that vaccination status. We pled in paragraph 98 that defendant thereby discriminated against plaintiff because of her religious beliefs. You didn't file a motion to amend your complaint. I mean, they filed a motion to dismiss. And they, in the motion to dismiss, they asked for dismissal of the desperate treatment claim, and that was granted. In response to their motion, you didn't file a motion to amend your complaint to be more specific, did you? No, Your Honor. This is actually our second amended complaint. I believe the first time we amended it was in response to a motion to dismiss, and then we amended it a second time. However, their motion to dismiss was filed about a few weeks before discovery closed, and our amendment came well before that. But, Your Honors, I believe to answer Judge Mathis's question about disparate treatment, I believe that we can prove religious discrimination through those three methods. You know, your failure to accommodate your religious, or I'm sorry, failure to accommodate your disparate treatment traditionally that, you know, I have these beliefs and somebody else was treated better because of that, or we could even find direct evidence. There's no ruling that if I find direct evidence in the discovery documents that I can't then prove religious discrimination based on the direct evidence that I found in discovery. But, you know, under notice of pleading, they have to know what they're defending against. That's all. The complaint has to plausibly allege the claim and give them notice of what they are. We'll look at it. I understand your argument.  And the failure to accommodate is a much stronger position you have, particularly in light of the Lucky case.  The Savelle case. The Savelle case. I mean, you know, those cases came out after Judge Borman ruled on this. I think one of those, I think the Lucky case actually came out of the Eastern District of Michigan. Your Honor, the Lucky case was my firm's case as well. Yeah, that was Eastern District of Michigan. Yes, it was. It looked like Judge Borman followed the Lucky District Court opinion there. Yes, he did. And that's the way they were ruling at the time. So I don't fault Judge Borman a lot because the law has not become clarified. Yeah, there's certainly been a lot of movement in those issues. It is different than what he thought it was. I see my red light, so. All right. Any further questions of counsel at this point? Thank you. All right. You'll have your seven minutes rebuttal. Thank you. Good morning. Good morning, Your Honors. Dino Pedagopoulos of Ballard's Bar for the American Red Cross. We believe that Judge Borman was right in what he did. Could you speak up a little bit more?  We believe that Judge Borman correctly decided this case. When you look at what is alleged, plaintiff is suggesting that there was a heightened pleading standard here and they pled enough. But here— Do you still believe he was right after Lucky and Savelle? Yes, because what was done here is that they referred in their complaint to the actual documentation that was provided to the Red Cross where the plaintiff explained what her supposed beliefs were. And therefore— Supposed beliefs? I mean, you're questioning her beliefs? I'm questioning whether they were religious or not. Her supposed religious beliefs, I should say, to be more accurate. I'm reluctant to question the sincerity of someone's religious beliefs, so you're not questioning sincerity? Not questioning sincerity, questioning whether they're actually religious beliefs— As opposed to medical. As opposed to medical. That was the argument, that her objections were more medical in nature than religious. And she referred to, and Judge Borman properly considered, the actual accommodation requests that she submitted to the Red Cross. And those accommodation requests said more than just, I have a religious belief. She tried to explain it. And therefore, the court was correct in considering that information because it's incorporated in the complaint. And that information demonstrated that these beliefs were not religious beliefs. It was a combination of both, wasn't it, to be fair? I mean, she says, yeah, she has a clotting disorder and so she's worried about the effect of the vaccine. But she also believes about God instructing her to bodies or temple and other things that are clearly religious. Well, I believe that they're not clearly religious based on the guidance that's out there. What she is saying is that, look, I prayed and this is the way I was guided. And that is so general. And the Supreme Court has looked at the issue of whether you can take a general belief like that. You can apply that to anything. She says that, look, I don't want to defile my body. Under that type of test, someone could say, you know what? Pollen count is high today. God told me not to defile my body. Therefore, I'm going to request that I don't go into work. You don't have to prove that it's a medical issue, that it could defile your body, because, you know, you have that sincere belief that if we're going to call it a religious belief, may entitle you to that accommodation. That goes way too far here. When you look at what has to be a religious belief, it has to be something that relates to large issues. Here, the only thing she is saying, and she didn't say it specifically even after the Red Cross asked her to explain specifically what her belief was, is that I believe personally that the COVID vaccine is bad for me. She didn't say my religious belief is that I should not be vaccinated, period, that I shouldn't put anything in my body. She's making a personal judgment that one thing and one thing only is bad for her, and because she believes it is bad for her, that it is therefore a religious belief. If you go down that road, then anything and everything becomes protected as a religious accommodation request. What do we do? I think I'm reading from part of her request. Well, she was asked to explain that in the initial denial. She said, look, you say this in general, but what is that belief? Because the only thing you have told us, the only thing you have told us here, is that I get to make choices that empower me to make healthy choices for my life. Taking the utmost care for my body allows me to continue to honor God and the temple he gave me without going against my conscience. And the ingredients in the vaccine can cause serious harm and even death. So she's clearly describing what she calls a religious belief as, I think it's bad for me. My religious belief is that if I conclude it's bad for me, I shouldn't have to do it. We can apply that to anything and everything. We have to consider what a religious belief is in order to analyze this case. How do you distinguish either Lucky or Savelle, our case? Because here we have more information that was pled. Here we have more information that was provided in the complaint that the court could consider. So, for example, if we just take a simple car accident case and someone alleges that the other person was at fault, there was a car accident, and I was injured. That may be enough to survive a motion to dismiss because they pled those elements. But if that complaint includes the traffic ticket the person got for running the red light, if it includes a photograph of the person running the red light and a statement to the police officer that they ran a red light, well, the court can and should consider those items in concluding that the case should be dismissed because it clearly shows that the person who's making the claim was at fault. But it seems like you're saying because she also talks about medical issues that that somehow negates the religious component of her request. It's not also. What she is saying is she is linking the medical issue to a supposed religious belief. It's not two issues. It's not I believe that God tells me that this vaccine is bad for whatever religious reason. It is my religious belief is I should not do anything that I conclude is bad for me. And I think this vaccine is bad for me. So don't we all already allow a religious exemption for vaccines? Don't we allow the Christian scientists to be exempt from vaccinations? I mean, and their their argument is the same, that they do not want to defile their body. They think it's against God's law. How is that any different than this case? Well, it's very different because in those cases, those individuals have a religious tenant that their entire religion espouses. And that tenant is not to take any vaccine in their body. Isn't that what she's saying? No, no, no. The only thing she's saying is that she shouldn't have to take the covid vaccine. OK, just one vaccine. She doesn't say the flu vaccine is bad. She doesn't say any other vaccine is bad. That's the only vaccine they're requiring or take right now. But I mean, I see your paragraph. I always seek to honor God. My body is my temple. Taking the covid vaccine would be defiling my body. I mean, I just assume any vaccine at this point would do the same thing violates my individual religious belief. I will not defile my body with unwarranted intrusions. So I know she took vaccines before, but she said her religion has has transformed. It's it's it's changed a little bit. I, you know, my problems, I don't think we should question the sincerity of of her religion and her her beliefs. I don't think that's the role of the court. The role of the court is not to challenge the sincerity. And I believe Judge Borman said that. Judge Borman said in analyzing this, that it is not his role to look at sincerity. That's an issue of fact. But it is his role. And it is this court's role to consider the issue of religiosity. Is this a religious belief or not? And looking at the at the document to have a does she have to belong to an organized religion to have a religious belief? That's sincere. I mean, no, you can't have her own religion. But it has to be a religious belief. Okay. At the pleading stage, don't we assume that the fact the allegations in the complaint are true? Unless you don't know. Well, not unless not unless they're contrary. Not unless there's contrary indications in the pleading. You don't have to saying that I have a religious belief is a fairly conclusory allegation. And standing alone, standing alone, maybe some courts may think that's enough. But here, where there is contrary evidence, where what she says. You told me sincerity of religious belief is a question of facts. So that wouldn't be appropriate on a motion to dismiss. Well, but we're talking about the issue of whether it's a religious belief that if what you have. Again, she can say that it's a religious belief. But if what if she also states what the basis of that religious belief is. Well, then you're questioning the basis of my religion. I just don't think. No. Questioning the basis of whether it's a religious belief. Your Honor, not everything is a religious belief. Let's take the example I gave before of I don't want to put anything bad in my body. Therefore, I should be able from a religious perspective to tell my employer I'm not going outside when there's increased pollution. I shouldn't have to go into work, commute into work during rush hour. Or I shouldn't have to go into a crowded subway because there are more germs. Because I'm putting something defiling in my body. You're taking religious accommodation and a request for religious accommodation to the point that there is nothing else. Anyone can say anything and call it a religious belief because it's their decision, their personal decision. They can simply say I choose to do this. Therefore, it is my religious belief. Let's move on to another issue. I mean you can see, don't you, that under the lucky case that Judge Borman erred in requiring a prima facie case at the valley of waiting on a motion to dismiss. 12B6 motion that under our case law what he did was an error. Well, I think what he did was he looked at our arguments that we made below and addressed each of those. But I believe in his opinion what he says is look, I'm addressing these issues simply because the defendant raised those issues. And I believe when he looked at the other two elements he concluded that they were there. So I don't know that there's any reversible error there because the whole basis of his decision was that she hadn't pled. Even though his legal analysis is incorrect, you say he came to the right result or something? Well, it's not, yeah, there's no harmful error there. Because when you look at the other two elements that he looked at he said, well, look, they're pled there. And so there's no, again, in our view he didn't require any type of heightened pleading standard. What he did was he took what was there and there was more information there. And that additional information allowed him to make the correct decision that what had been pled was not a religious accommodation request. It was a fear that there was a medical issue there or that the vaccine was bad for her. And that's all there. And the Red Cross asked her for more information. And, Your Honors, if you look at her response to that request for additional information from the Red Cross, they initially denied it. And they said, if you want to give us more information, tell us, give us that additional information. And here are the reasons we're denying it. You didn't identify a religious belief. You say it's about making healthy choices. You say it's not safe, but it is safe. And you haven't identified your religious belief here. And her response here, her response to that was, and we quoted it on page five of our brief, I begin my individual decision making with a heart of faith and trust that my decisions are between me and my maker. Meaning I can decide what I want to decide. My beliefs are my beliefs, which goes right to that point of I can decide what I want to decide. In that first sentence she says, my sincere, sincerely heard religious belief stems from the biblical teaching of my religious spiritual leader, Jesus Christ. And then she actually cites scripture as to why she thinks Jesus Christ would be opposed to putting things in her body. I mean, she cites scriptures from St. Paul, Romans, Timothy. I mean, she cites a lot of scripture. And that's the basis, isn't it? Well, no, not if all that scripture says is that she doesn't. Are we going to be interpreting the scripture, the gospel? Well, I don't know that we need to do that, but if all she's doing is just citing things, but what she's telling us is. She reads the gospel in a particular way, and I've got to read it a different way. Well, she's reading it to say that she can decide whatever she wants to decide. And you can interpret that and determine whether or not anyone and everyone in any circumstance can say, I believe this, whatever, fill in the blank, and call that a religious belief. Think about what this could do from an employment perspective if all you have to do is say, no, I believe this. I believe X, Y, and Z, fill in the blank, and now you have a religious discrimination. We have conscientious objectors that don't fight in the wars, and guess what? We allow that, and somehow the country has survived. I mean, we have accommodated religious beliefs in other areas. We have, but when you look at a belief like that, you look at a belief like that, Your Honor, and what you're talking about is the taking of a human life. And you look at, I believe the Supreme Court in Africa said, look, when you look at religious beliefs in general, religious beliefs are large, imponderable issues. And an issue of life and death like that is certainly an imponderable issue when you talk about a conscientious objector and someone believing that it's wrong to take a human life. But taking that and bringing it down to the point of saying, I think the COVID vaccine is bad. I'm making that decision, and because I'm a Christian, that's fine, and I can do that, and you have to accommodate me, frankly, is taking something, is almost disrespecting a religious belief, frankly, to take it that far. All right. You're out of time. I think we understand your argument. Any further questions? Judge Gilman? Judge Mathis? Thank you for your argument. Mr. Wilkin, you have seven minutes for rebuttal. Thank you, Your Honors. I will keep it brief. Defendant is cherry-picking portions of Ms. Sturgill's accommodation requests and highlighting only her purportedly secular justifications. But they can't cite to a single legal authority that stands for the proposition that an individual seeking a religious accommodation must be careful only to mention her religious concerns, lest they be invalidated. That's from Carol V. Toby Dynavex out of California. We don't require people that have Title VII protection to be attorneys. They're not required to be perfect. They're just required to put the company on notice and say, hey, these are my beliefs, and I believe that I can't take the vaccine. I believe that these are my religious beliefs, and I can't take it. The company is not supposed to come back and say, you know what, we don't believe that you actually have those religious beliefs. Tell me this. Is there any limiting principle, though? I mean, can a person just self-declare any religious belief, no matter how implausible, and the court has to accept it? I mean, what if she said, well, you know, because my body is my temple and God tells me that I only can work three days a week because I need a lot of rest and exercise? Or that, hey, my religious belief is that I should earn $100,000 even though the normal pay is $50,000. Is there any limiting principle of what she could declare as a sincere religious belief? Well, that's a great question, Your Honor. I believe that the limiting principle comes from the statute itself. A defendant is allowed to rely back on an undue hardship defense so that they don't have to provide an accommodation. But as far as to your question about pondering the greatness of somebody's religious beliefs, as long as they hold those beliefs in a place that considers the larger issues, I mean, it may seem ridiculous to you or I that somebody says, you know, my religious belief is that I'm a billionaire. Now, they may not be sane, but that's a sincerity question, and that's a question that only a jury can decide. Judges in this court are not in the business of determining whether somebody is telling the truth. Whatever she asserts is her sincere religious belief, we have to just accept at face value. At the pleading stage, yes, Your Honor, we have to take the allegations as true. If she says these are my religious beliefs and I believe that I'm not permitted to get the COVID vaccine based on those, we're supposed to take that as true. What we're not supposed to do, especially at the pleading stage, is say, you know, you cited these other issues, and, you know, we kind of think that's really what you were going for. That's not what we're supposed to do at the pleading stage. We're supposed to take what she's saying as true. Red Claws pointed out that, look, you took the hepatitis vaccine a little back right, and that's, and she says, well, what, has she changed her view of what is acceptable from a religious view? I believe that goes back to her sincerity. And it also goes to religious beliefs change over time. We're in the middle of a global pandemic. And, of course, somebody may, you know, change their beliefs during a time of uncertainty like that. I don't think that just because somebody got a hepatitis vaccine multiple years ago that that all of a sudden means that a company can force her to get anything and everything under the sun that they would like. This court in Lucky held that a trial course has absolutely no basis to require that plaintiff explain how her religion has a specific tenet or principle that does not permit them to be vaccinated. In Lucky, she said, I prayed, I received an answer, and I acted. That's what we pled here. And if my brother counsel here would have his way, we would be punished for over pleading, essentially providing more notice than we're required to. If there's no other questions, I will surrender the rest of my time. I have none. All right. Thank you. Thank you.